Samuel MULLINS and Florence
Mullins, Plaintiffs,

v.

HARRY'S MOBILE HOMES, INC., and
Fleetwood Homes of Virginia, Inc.,
Defendants.

Civ. A. No. 1:94–0346.

United States District Court,
S.D. West Virginia,
Bluefield Division.

Aug. 23, 1994.

David C. Smith, Princeton, WV, for plaintiffs.

Kermit J. Moore, Bluefield, WV, for defendants.

***MEMORANDUM OPINION AND ORDER***

FABER, District Judge.

Pending before the court is plaintiffs' Motion to Remand which requests that this case be returned to the Circuit Court of McDowell County, West Virginia, where it was originally filed. Plaintiffs contend that the amount in controversy is less than the $50,000 threshold necessary to support federal jurisdiction. The court's resolution of this issue is complicated somewhat by the fact that the *ad damnum* clause in the Complaint does not seek judgment in a specific dollar amount.

The defendant removed this case from state court alleging that citizenship of the parties is diverse and the amount in controversy exceeds $50,000. The basis for federal jurisdiction is diversity of citizenship. The only issue before the court on the present motion is the disagreement as to the amount in controversy.

In October of 1992, plaintiffs purchased from the defendant Harry's Mobile Home Sales ("Harry's") a 1993 Fleetwood Wingate home which had been manufactured by defendant Fleetwood Homes of Virginia ("Fleetwood"). The contract price was $17,-995. Harry's transported, delivered and erected the mobile home. Plaintiffs contend they have had numerous problems with the mobile home. They charge the defendants with breach of contract and several torts, including fraud. They seek compensatory damages for loss of the benefit of their bargain in the amount of $17,995, finance charges incurred and "aggravation, annoyance and inconvenience." Plaintiffs also request an award of punitive damages. Except for the contract price of $17,995, which is only part of the claimed damages, plaintiffs' Complaint places no dollar values upon the respective items of damages claimed. The plaintiffs assert that they made a settlement offer of $45,000. Defendant rejected this offer, which plaintiffs contend is evidence that the $50,000 amount in controversy, necessary for this court to have jurisdiction, is absent.

The fountainhead case on the determination of amount in controversy for purposes of federal jurisdiction is *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In that case, the Supreme Court said:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal courts is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify the dismissal.

*Id.* at 288–89, 58 S.Ct. at 590.

■ The defendant may remove a suit to federal court notwithstanding the failure of the plaintiff to plead a specific dollar amount in controversy. *Kennard v. Harris Corp.*, 728 F.Supp. 453 (E.D.Mich.1989). The rule could hardly be otherwise. For if it were, any plaintiff could avoid removal simply by declining, as the plaintiffs have done here, to place a specific dollar value upon their claim.

■ When the amount of damages a plaintiff seeks is unclear, the courts often require the defendant to prove to a legal certainty that the claim meets the requisite jurisdictional amount. This principle stems from *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), and has been applied in recent cases such as *Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir.1992), and *Marler v. Amoco Oil Co.*, 793 F.Supp. 656 (E.D.N.C.1992). It seems clear, in such circumstances, that the court may look to the entire record before it and make an independent evaluation as to whether or not the jurisdictional amount is in issue. 14A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, *FEDERAL PRACTICE AND PROCEDURE*, § 3725 at 423–24 (1985). Thus, the court may consider, in addition to plaintiffs' Complaint, the removal petition and other relevant matters in the file.

■ The court is not unmindful of authorities which point out that the removal statute is to be construed strictly against removal, and the defendant, in a case such as this, has the burden of proving facts to support the required jurisdictional amount. These principles are not inconsistent with the "reason-

able certainty" rule of the *St. Paul Mercury* case, *supra.* The removing defendant always has the burden of demonstrating that the jurisdictional amount is present. Where the plaintiff demands a specific dollar figure in excess of that amount, however, defendant's burden is easily satisfied by the allegations of plaintiff's complaint. *Pachinger v. MGM Grand Hotel Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir.1986).

■ The court, in applying these principles, is not required to leave its common sense behind. In this case, common·sense applied to the allegations of the Complaint compels the court to conclude that the amount in controversy exceeds $50,000. We start with the contract price for the mobile home—the specific figure of $17,995. To this figure is added plaintiffs' claim for finance charges, which would at this point be something less than the total of $1,381.44 for such charges which would be paid over the life of the contract.

■ Additionally, plaintiffs ask to be compensated for "aggravation, annoyance and inconvenience" and they seek punitive damages as well. West Virginia law allows damages for annoyance and inconvenience in cases involving loss of use of property. *Ellis v. King*, 184 W.Va. 227, 400 S.E.2d 235 (1990); *Kirk v. Pineville Mobile Homes*, 172 W.Va. 693, 310 S.E.2d 210 (1983); *Jarrett v. E.L. Harper & Son, Inc.*, 160 W.Va. 399, 235 S.E.2d 362 (1977). Furthermore, the law makes clear that a good faith claim for punitive damages may augment compensatory damages in determining the amount in controversy unless it can be said to a legal certainty that plaintiff cannot recover punitive damages in the action. *Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 64 S.Ct. 5, 88 L.Ed. 15 (1943). If relevant state law permits punitive damages on the facts alleged, such punitive damages are part of the amount in controversy for jurisdictional amount purposes.

■ West Virginia state law generally permits an award of punitive damages in a case involving fraud or malicious conduct. *See generally*, 5C *MICHIE'S JURISPRUDENCE*, §§ 65–67. A plaintiff must carry a heavy burden of proof to obtain punitive damages, but the plaintiffs here have pleaded such a claim and placed their right to punitive damages in controversy. Accordingly, plaintiffs' claim for punitive damages must be added to their claim for compensatory damages in determining whether the jurisdictional amount of $50,000 is present. If plaintiffs are successful on this claim, West Virginia law would support an award of punitive damages which, when added to plaintiffs' claim for compensatory damages including aggravation and annoyance, could exceed the $50,000 jurisdictional amount. Courts in West Virginia have let stand punitive damages awards substantially in excess of compensatory damages recovered in the same case. *See, TXO Production Corp. v. Alliance Resources Group*, 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd*, —— U.S. ——, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993); *Hinerman v. Daily Gazette Co., Inc.*, 188 W.Va. 157, 423 S.E.2d 560 (1992). On the basis of this precedent, this court is confident that plaintiffs will, upon trial of this action, whether in state or federal court, seek to establish total compensatory and punitive damages well in excess of the $50,000 jurisdictional amount. Plaintiffs contend that their offer to settle for $45,000 is proof that the $50,000 jurisdictional amount in controversy is absent. This court views the $45,000 offer as evidence of just the opposite. In order to allow for the hazards and costs of litigation, settlement offers routinely represent a discount from the damages plaintiffs will attempt to prove at trial. If these plaintiffs are willing to settle for $45,000 before trial, we can be assured that evidence of damages offered by them at trial will significantly exceed that sum. It takes only a small increase over the settlement offer to reach the $50,000 threshold for federal jurisdiction.

Additionally, in their Supplemental Memorandum in Support of Motion to Remand, the plaintiffs point out that, in response to interrogatories, the defendants have denied that plaintiffs' damages exceed the sum of $50,000 and have also denied that even if plaintiffs succeed on their claim and all defendants' affirmative defenses fail, plaintiffs could recover in excess of $50,000. Plaintiffs contend that these responses are evidence that the

jurisdictional amount is not in controversy. The court disagrees; defendants' denial that plaintiffs' damages will exceed $50,000 under any theory does nothing more than put in controversy whatever claim the plaintiffs make which, as explained herein, the court believes exceeds $50,000.

This case is similar to *Sharp Electronics Corp. v. Copy Plus, Inc.*, 939 F.2d 513 (7th Cir.1991). There, Copy Plus, a distributor of electronic products, sued in Wisconsin state court its manufacturer and supplier, Sharp, for breach of contract and added a claim for punitive damages for fraudulent misrepresentation. The complaint asked for $15,000 in compensatory damages, and additional damages in an unspecified amount for loss of customer goodwill, punitive damages and attorneys fees. Sharp filed a separate action in federal court to stay the state action and to compel arbitration under the distributor agreement. The District Court dismissed the federal case holding that the $50,000 jurisdictional amount was absent. The United States Court of Appeals for the Seventh Circuit reversed, holding that, since punitive damages may be awarded for fraudulent misrepresentation under Wisconsin law, it was clear that Copy Plus could potentially recover punitive damages under the allegations of the complaint. The punitive damages claim in an unspecified amount, when added to the $15,000 breach of contract claim, was deemed sufficient to satisfy the $50,000 amount in controversy requirement.

The court therefore concludes that any realistic assessment of the record establishes the jurisdictional amount of $50,000 exclusive of interest and costs to be present, and that defendant's burden of proving jurisdiction is met. Plaintiffs' Motion to Remand is, accordingly, **DENIED.**

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

IT IS **SO ORDERED.**