Sherry ASBURY–CASTO, Plaintiff,

v.

GLAXOSMITHKLINE,
INC., Defendant.

No. CIV.A.5:04 CV 111.

United States District Court,
N.D. West Virginia.

Jan. 19, 2005.

Mark P. Coulter, Robert Pierce & Associates, Pittsburgh, PA, for Plaintiff.

David B. Thomas, Allen, Guthrie, McHugh & Thomas, PLLC, Pamela L. Campbell, Allen, Guthrie, McHugh & Thomas, PLLC, Charleston, WV, for Defendant.

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND

STAMP, District Judge.

### I. *Procedural History*

On August 31, 2004, the plaintiff, Sherry Asbury–Casto, commenced this action in the Circuit Court of Brooke County, West Virginia. The defendant, GlaxoSmithKline, Inc., timely removed the action to this Court pursuant to 28 U.S.C. § 1332. On October 4, 2004, the defendant filed a motion to stay this action pending transfer to the United States Judicial Panel on Multidistrict Litigation ("MDL Panel"). On October 15, 2004, the MDL Panel entered a conditional transfer order assigning this case to the *In re Paxil Products Liability Litigation,* MDL–1574. On November 1, 2004, the plaintiff filed a motion to vacate the conditional transfer order, which is currently pending before the MDL Panel. On November 8, 2004, the parties filed an agreed order staying the first order and notice regarding discovery and scheduling in this action pending resolution of the issue of transfer by the MDL Panel. This Court approved and entered the parties' agreed order on that same date.

On October 27, 2004, the plaintiff filed a motion to amend her complaint. This Court granted the plaintiff's motion on December 2, 2004. The plaintiff also filed a motion to remand and a memorandum in support, to which the defendant responded with a memorandum in opposition. The plaintiff did not reply to the defendant's response.

The plaintiff's motion to remand is now before this Court. After reviewing the parties' memoranda and the applicable law, this Court finds that defendant's removal was proper and the plaintiff's motion to remand should be denied.

### II. *Facts*

The plaintiff brings this action individually and on behalf of all consumers within the State of West Virginia who, since 1994, purchased the prescription medication Paxil, a drug manufactured and marketed by the defendant. The plaintiff's complaint alleges that the defendant "fraudulently induced consumers to purchase its pharmaceutical Paxil by advertising nonexistent benefits and concealing and trivializing known deadly and life altering risks." Compl. ¶ 1. She claims that "[t]he defendant knew, or should have known

that Paxil, as designed and manufactured, would cause severe health risks in individuals taking the drug, including, but not limited to: severe withdrawal symptoms; addiction; and, increased risk of suicide." Pl.'s Mem. in Supp. of Mot. for Remand to State Court at 2 (citing Compl. ¶¶ 18–21). Based on these allegations, she brings claims against the defendant for violations of the West Virginia Consumer Credit and Protection Act and for unjust enrichment. She seeks compensatory and punitive damages, as well as "[r]estitution of all purchase costs Plaintiffs paid for Paxil and disgorgement of Defendant's profits." Compl. ¶ F.

Defendant removed the case to this Court under 28 U.S.C. § 1332, which provides federal jurisdiction when diversity of citizenship is present. Both parties agree that there is complete diversity under the statute, as plaintiff is a citizen of West Virginia and defendant is a North Carolina corporation with its principal place of business in Pennsylvania. Defendant further contends that, although the plaintiff specifically disclaims damages in excess of $75,000.00 in the *ad damnum* clause of the complaint, her statement is not determinative, and the amount in controversy exceeds the jurisdictional requirement. In her motion to remand, plaintiff denies that the amount in controversy requirement is satisfied. Plaintiff contends that the burden of proof is on the defendant to show that the damages could exceed $75,000.00, and that the defendant has failed to do so.

### III. *Applicable Law*

When a defendant seeks to remove a case from state court to a federal district court pursuant to 28 U.S.C. § 1441(a), the federal court must be able to exercise original jurisdiction over the matter. *See* 28 U.S.C. § 1441(a)(1). Under 28 U.S.C. § 1332(a), the federal district courts have original jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

■ A defendant wishing to remove a case to federal court based upon § 1332 must offer "competent proof" that the jurisdictional requirements are met. *See Chase v. Shop 'N Save Warehouse Foods*, 110 F.3d 424, 427 (7th Cir.1997). This proof must be by a preponderance of the evidence. *See, e.g., Singer v. State Farm Mut. Auto. Ins.*, 116 F.3d 373, 377 (9th Cir.1997). "To satisfy this burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000.00." *Sayre v. Potts*, 32 F.Supp.2d 881, 886 (S.D.W.Va.1999). If federal jurisdiction is doubtful, remand is necessary. *See Mulcahey v. Columbia Organic ·Chem. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994).

■ Although courts strictly construe the statute granting removal jurisdiction, *see Doe v. Allied Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993), the court is not required "to leave common sense behind" when determining the amount in controversy. *Mullins v. Harry's Mobile Homes*, 861 F.Supp. 22, 24 (S.D.W.Va.1994). When the amount in controversy is not apparent on the face of the plaintiff's complaint, the federal court must attempt to ascertain the amount in controversy by considering the plaintiff's cause of action as alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the record. *See* 14C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3725 at 73 (3d ed.1998). However, the court is limited to examining only evidence that was available at the moment the petition for removal was filed. *See Chase*, 110 F.3d at 428.

The Supreme Court of Appeals of West Virginia has stated that "the value of a lawsuit is not determined definitively by the *ad damnum* clause." *State ex rel. Strickland v. Daniels*, 173 W.Va. 576, 318 S.E.2d 627, 631 (1984). The *ad damnum* clause is only an estimate of the relief to which the plaintiff is entitled, and "the [p]laintiff is not restricted or bound by the relief requested." *Gillespie v. Brewer*, 602 F.Supp. 218, 223 (N.D.W.Va.1985). Further, Federal Rule of Civil Procedure 54(c) states: "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."

Under West Virginia law, a good faith claim for punitive damages may augment compensatory damages in determining the amount in controversy unless it can be said to a legal certainty that plaintiff cannot recover punitive damages in the action. *White*, 861 F.Supp. at 27; *Mullins*, 861 F.Supp. at 24. West Virginia allows an award of punitive damages to an insured where the insurer's failure to honor a claim involves a malicious intention to injure or defraud. *White*, 861 F.Supp. at 27; *Mullins*, 861 F.Supp. at 24. Thus, where a plaintiff seeks punitive damages for defendant's alleged intentional, willful, and malicious breach of the covenant of good faith and fair dealing, a court may permit punitive damages to be included in the amount in controversy for jurisdictional purposes. *See White*, 861 F.Supp. at 27. Further, West Virginia courts have upheld punitive damages awards that have been substantially in excess of the compensatory damages recovered in the same action. *See id.*

## IV. *Discussion*

First, it is important to note that this Court may rule on the remand motion regardless of the fact that the MDL Panel has entered a conditional transfer order.

This Court continues to retain jurisdiction over the matter until a final transfer order is entered. *See* Rule 18, *Rules of Procedure of the Judicial Panel on Multidistrict Litigation* ("The pendency of a ... conditional transfer order ... does not affect or suspend orders and pre-trial proceedings in the district court in which the action is pending and does not in any way limit the pre-trial jurisdiction of that court."); *see also Gen. Elec. Co. v. Byrne*, 611 F.2d 670, 673 (7th Cir.1979) ("The mere pendency of a motion to transfer before the Multidistrict Panel does not affect or suspend the jurisdiction of the transferor court, or limit its ability to act on matters properly before it.").

The plaintiff moves to remand this case on the grounds that the amount in controversy does not meet the jurisdictional threshold and, therefore, no federal jurisdiction exists. The plaintiff notes that she has expressly disclaimed any damages or restitution in excess of $75,000.00 in her complaint. The defendant counters that the plaintiff is not bound by the amount stated in the *ad damnum* clause of her complaint, and may seek to amend it after final judgment to conform to the evidence. The defendant further argues that the plaintiff has filed two previous lawsuits in federal court alleging damages in excess of $75,000.00 for identical injuries. The defendant also asserts that the plaintiff's attempt to file a separate disclaimer should be disregarded because it was not signed by the plaintiff, was not filed with the complaint, and does not establish that the plaintiff does not seek and will not accept in excess of $75,000.00 in this case. Finally, the defendant contends that plaintiff's attempt to amend her complaint fails to defeat jurisdiction because post-removal amendments cannot be used to defeat federal jurisdiction.

In reviewing the record, this Court must first agree with the defendant that the plaintiff is not bound by the restriction of damages made in the *ad damnum* clause of her complaint. The Supreme Court of Appeals of West Virginia has explicitly stated that "[t]he *ad damnum* is only an estimate" and "[t]he plaintiff is not restricted or bound by the relief requested." *Gillespie*, 602 F.Supp. at 223. Thus, the restriction made in the plaintiff's complaint, standing alone, is insufficient to defeat jurisdiction.

Secondly, this Court finds that the plaintiff's disclaimers are also ineffective. Case law suggests that, in order to be operative, a disclaimer must be "a formal, truly binding, pre-removal stipulation signed *by counsel and his client* explicitly limiting recovery." *McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481, 485 (S.D.W.Va. 2001) (emphasis added); *see also Virden v. Altria Group, Inc.*, 304 F.Supp.2d 832, 847 (N.D.W.Va.2004) ("Therefore, absent a binding stipulation *signed by Virden* that he will neither seek nor accept damages in excess of $75,000, the Court must independently assess whether the defendants have proven by a preponderance of the evidence that Virden's complaint seeks damages in excess of $75,000." (emphasis added)). The disclaimers submitted by the plaintiff were signed only by plaintiff's counsel, D. Aaron Rihn. Therefore, at least the possibility exists that these stipulations could prove non-binding on the plaintiff. Moreover, the plaintiff, while disregarding this factor, has cited no case law that supports her position that the lack of signature does not render the disclaimer invalid.

Consequently, this Court must find that the disclaimers filed by the plaintiff are not effective to prevent jurisdiction. The first, filed prior to removal, is ineffective because it was not signed by the plaintiff. The second, filed after removal, is ineffective both because it was not filed pre-removal and because it was not signed by the plaintiff.

Thus, given the fact that the plaintiff's procedural actions have failed to prevent jurisdiction, this Court must determine whether the defendant has proven by a preponderance of the evidence that the amount in controversy is satisfied in this case. The plaintiff is seeking to: "(1) compensate Paxil users for [the defendant's] fraudulent and deceptive marketing; (2) refund to customers the purchase price they paid for Paxil; and (3) to disgorge [the defendant] of the ill-gotten gains and illegal profits it earned from its deceptive Paxil marketing." Compl. ¶ 8.

"The amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal." *Hutchens v. Progressive Paloverde Ins. Co.*, 211 F.Supp.2d 788, 791 (S.D.W.Va.2002) (citing *McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481, 489 (S.D.W.Va.2001)). At the time of removal, the plaintiff's complaint separately sought compensatory damages, punitive damages, and "[r]estitution of all purchase costs Plaintiffs paid for Paxil and disgorgement of Defendant's profits." Compl. ¶¶ C, D, F. The plaintiff has since requested, and has been granted by this Court, leave to amend her complaint to specifically seek the disgorgement of profits associated with the purchase of Paxil by *each individual class member*, rather than in the aggregated form utilized in the initial complaint.

The plaintiff concedes that this Court should not consider amendments made to a complaint after removal in determining whether jurisdiction exists. However, she asserts that this Court may consider her amendment because it merely clarifies an in-artfully pled element of her complaint. *See Angus v. Shiley*, 989 F.2d 142, 146 (3d Cir.1993). This Court does not interpret

the plaintiff's amendment as a clarification, however, but as a substantive change to her damage claim. Thus, this Court will not consider the language of plaintiff's amendment in its calculation of the amount in controversy.

██ As noted by the defendant, the Fourth Circuit has established that "the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir.2002) (quoting *Gov't Employee's Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir.1964)). The plaintiff alleges in her complaint that "[a]s a direct and proximate result of their false and deceptive marketing, [defendant's] Paxil sales exceeded $2 billion of ill-gotten gains and profits in the year before plaintiff filed this action." Compl. ¶ 7. Based on this allegation, this Court is satisfied that the restitution and disgorgement remedies sought on behalf of all West Virginia residents would result in a pecuniary loss to the defendant of greater than $75,000.00.

In *Virden v. Altria Group, Inc.*, 304 F.Supp.2d 832 (N.D.W.Va.2002), the district court held that punitive damages are unavailable for cases brought pursuant to the West Virginia Consumer Credit and Protection Act. *Id.* at 850. The court further held that attorney's fees should be excluded from calculations of the amount in controversy for claims brought under this Act. *Id.* Thus, this Court finds that these elements should not be considered for the purposes of determining the amount in controversy in this action. Nevertheless, given the fact that the plaintiff seeks a significant amount of restitution and disgorgement in this case, this Court finds that the defendant has met its burden of demonstrating that the amount in controversy exceeds the jurisdictional requirement.

## V. *Conclusion*

For the foregoing reasons, this Court is satisfied that the amount in controversy exceeds $75,000.00. Accordingly, plaintiff's motion to remand is DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein and to the Clerk of the Judicial Panel on Multidistrict Litigation at One Columbus Circle, N.E., Thurgood Marshall Federal Judiciary Building, Room G–255, North Lobby, Washington, D.C. 20002.